NO. 07-04-0057-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 2, 2006


______________________________



JANIE SANCHEZ and KENNETH ADAMS, 



 Appellants


v.



LOWRY SCHAUB, M.D. and KEVIN CRAWFORD, M.D., 



 Appellees

_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-518,200; HON. SAM MEDINA, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J. and CAMPBELL, J. (1)

 The dispute before us involves informed consent and whether Janie Sanchez gave
same to Lowry Schaub, M.D., and Kevin Crawford, M.D., before performing a stellate
ganglion block on her. (2) According to the record before us, the block was her third under
the recommendation or with the approval of Crawford. At the time, Crawford and Schaub
had just completed a procedure whereby they placed Sanchez under general anesthesia
and manipulated her wrist. Some time before undergoing the wrist manipulation but after
having received the first two ganglion blocks, Sanchez verbally told Crawford that she did
not want any more blocks. Because of this, Crawford suggested the wrist manipulation as
an alternative. 

 The record further indicates that after Sanchez received the third block while under
general anesthetic, a large abscess developed at the site of the injection. This resulted in
her experiencing pain and eventually having several of her spinal discs fused. So,
Sanchez sued the two doctors, contending, among other things, that they acted without her
informed consent. Upon entertaining cross-motions for summary judgment, the
trial court granted those of Crawford and Schaub while denying that of Sanchez. The two
doctors had argued that their patient had consented to the block via the written consent
forms executed before undergoing the manipulation. We reverse the summary judgment.

 Three issues are before us. The first concerns whether Crawford and Schaub were
entitled to judgment as a matter of law. The second involves whether Sanchez proved the
lack of consent as a matter of law. The third covers whether the trial court erred in
purportedly excluding parol evidence. We now address the first.

 Informed Consent

 As previously mentioned, Sanchez purportedly told Crawford of her refusal to
undergo further blocks or other treatment entailing injections for the pain in her wrist. 
Nevertheless, she signed several consent forms granting him and Schaub authority to
proceed with the manipulation and administer anesthetics. Therein appeared the following
language:

 I . . . understand that my physician may discover other or different conditions
which require additional or different procedures than those planned. I . . .
authorize my physician, and such associates, technical assistants and other
health care providers to perform such other procedures which are advisable
in their professional judgment . . . [;]


 I . . . do hereby voluntarily consent and request such diagnostic procedures,
hospital care, medical, surgical or x-ray treatment by Dr. Crawford, and such
associates, assistants, designees, or other health care providers as are
necessary in the judgment of the doctor, and further authorize the
performance of such diagnostic studies or procedures which, in the
professional opinion of such doctor, are advisable to attempt to remedy the
condition(s) which have been explained to me as fracture left distal radius[;] 



 It has been explained that during the course of the operation and the
procedure(s) named herein, other or different conditions may be revealed
that necessitate an extension of the original procedure(s) or additional or
different procedure(s) than those set forth herein. I . . . therefore authorize
and request such doctor, his associates, assistants, designees, or other
health care provider to perform such procedures as are advisable in the
professional judgment of such doctor. The authority granted herein shall
extend to remedying all conditions that require treatment and which may not
be known to such doctor at the time the procedure(s) or operation is
commenced . . . [;]


 I . . . understand that anesthesia involves additional risks and hazards but I
. . . request the use of anesthetics for the relief and protection from pain
during the planned and additional procedures. I . . . realize the anesthesia
may have to be changed possibly without explanation to me . . . ; [and,]


 I . . . consent to the administration of any anesthesia deemed advisable to
be applied by or under the direction of Dr. Schaub and/or an anesthesiologist
on the Medical Staff of Methodist Hospital.


(Emphasis added). From the above, we see that the forms spoke in terms of informed
consent viz the medical procedures to be completed and the anesthetics to be
administered. Moreover, the words used withheld from the doctors unbridled discretion to
act. For instance, their authority to undertake procedures other than the wrist manipulation
(which the forms expressly alluded to) was conditioned by such terms as "advisable in their
professional judgment," "necessary in the judgment of the doctor," "in the professional
opinion of such doctor, are advisable," "advisable in the professional judgment of such
doctor," and "require[d]." In other words, Crawford (who was to perform the manipulation)
was given permission to undertake other medical procedures, but they had to be
necessary, required, or advisable in his professional judgment.

 Similarly conditioned was the anesthesiologist's (i.e. Schaub's) discretion in
administering anesthetics. Though one form stated that Sanchez consented to the
"administration of any anesthesia," the anesthesia and its mode of administration had to
be "advisable." The other form said nothing about the anesthesia being advisable by
anyone. Yet, there, the "use of anesthetics" was linked to "the relief and protection from
pain during the planned and additional procedures." (Emphasis added). So, the
administration of anesthetics under the second form was dependent upon the medical
procedures pursued, which, in turn, were dependent upon the doctor's professional
judgment and opinion. Thus, the ability of the physicians to act and the scope of consent
granted by Sanchez revolved around and were limited by concepts such as necessity,
judgment, and advisability. 

 Next, authority holds that when practicing medicine, doctors represent that they
possess the reasonable degree of skill and learning possessed by others in their
profession. Zapata v. Rosenfeld, 811 S.W.2d 182, 184 (Tex. App.-Houston [1st Dist.]
1991, writ denied); Dennis v. Allison, 678 S.W.2d 511, 513 (Tex. App.-El Paso 1984), aff'd,
698 S.W.2d 94 (Tex. 1985); accord Schneider v. Haws, 118 S.W.3d 886, 890 (Tex.
App.-Amarillo 2003, no pet.) (stating that physicians need only exercise ordinary or
reasonable care and skill under the circumstances). So too is it implicit in the performance
of their trade that they will use reasonable and ordinary care and skill in the application of
such knowledge to accomplish the purpose for which they are employed, Dennis v. Allison,
678 S.W.2d at 184, and that they will exercise their best judgment. Zapata v. Rosenfeld,
811 S.W.2d at 184. And, the standard against which one assesses whether these
representations and duties were met is one of a reasonable physician in like circumstance. 
In other words, the exercise by a physician of his judgment is gauged against the accepted
standards in the medical community. Russell v. Murphy, 86 S.W.3d 745, 749 (Tex.
App.-Dallas 2002), rev'd on other grounds, 167 S.W.3d 835 (Tex. 2005); see Murphy v.
Russell, 167 S.W.3d 835, 839 (Tex. 2005) (recognizing that a physician's performance of
a medical procedure without prior informed consent may not necessarily result in liability
if circumstances exist which, under the applicable standard of care, justify the conduct, and
expert testimony may be needed to determine that). With that said, we turn to the
circumstances before us. 

 Upon comparison of the phrases used to describe the authority afforded both
doctors via the consent forms with the general duties imposed upon physicians by the law,
we conclude that the forms were little more than a reiteration of the law. The former
merely stated that Crawford and Schaub were accorded the ability to invoke their judgment
while the latter imposed upon them the obligation to exercise their best judgment. So, the
consent forms at bar actually afforded them no more or less authority and protection than
that given by law. Given this, we must also conclude that whether they exceeded the
leeway granted and thereby exposed themselves to liability for undertaking a procedure
outside the scope of Sanchez' consent depended upon whether their actions, under the
circumstances appearing before them, comported with objective standards of care
applicable to those in their profession. (3) Thus, their determination that the ganglion block
was needed was not alone enough to shield them from liability if the decision nonetheless
deviated from those standards of care, and we reject their argument to the contrary. Again,
what mattered is whether the decision to administer the block comported with objective
medical standards of care under the circumstances before them. 

 Moreover, the record contains evidence indicating that not only would Sanchez have
refused Crawford and Schaub permission to undertake the block had she been asked but
also that she purportedly refused to undergo such a procedure before agreeing to the
manipulation. Furthermore, one can reasonably infer from that evidence (assuming it was
to be believed) that Crawford knew of her refusal when discussing the block with Schaub
since he was the one whom Sanchez told and who suggested the manipulation due to her
refusal. To this, we add expert testimony appearing of record that: 1) "the standard of care
. . . required Schaub to wait until recovery from the general anesthesia to obtain actual and
meaningful informed consent for the procedure before performing the stellate ganglion
block . . ."; 2) "the standard of care . . . required that if a stellate ganglion block is to be
performed without informed consent and while the patient is unconscious . . . the patient
have an emergency condition involving life or death"; 3) "the standard of care . . . require[d]
that a stellate ganglion block should never be administered while the patient is
unconscious, unless there is a medical emergency involving life or death"; and, 4) "the
accepted standard of care in ordering and administering a stellate ganglion block
procedure require[d] the patient to be awake and able to respond and report to the medical
care provider." Furthermore, we are cited to no evidence of record suggesting that there
existed an emergency involving Sanchez' life or death when Crawford and Schaub opted
to perform the block. Nor did our own review uncover any. Rather, it revealed the
presence of evidence illustrating that the injection was made to assure the effectiveness
of the wrist manipulation, not to address some medical emergency encompassing
Sanchez' life or death. 

 In short, there appears evidence of record raising material issues of fact regarding
whether the actions of Crawford and Schaub comported with accepted medical standards
when performing the block. This, in turn, means that material issues of fact exist regarding
whether the two physicians acted within the scope of consent granted by Sanchez. Thus,
they were not entitled to judgment as a matter of law. Yet, we cannot say that Sanchez
was entitled to judgment as a matter of law either. This is due to the testimony of Crawford
and Schaub indicating that in their view the administration of the block was a necessary
procedure under the circumstances. Given this contradictory evidence, we have no choice
but to allow a factfinder opportunity to resolve the controversy. (4)

 Exclusion of Parol Evidence 

 As for the issue involving parol evidence, we must overrule it. We do so not
because the trial court acted within the scope of its discretion when ruling but rather
because we know of no particular evidence it excluded. 

 In granting the summary judgment, the trial court simply "sustain[ed] the defendant's
objections to all summary judgment evidence that violates the parol evidence rule and . .
. [ordered] such evidence stricken." Yet, what evidence, if any, purportedly violated that
rule went unmentioned in the order. That is, the trial court made no determination that any
particular piece of evidence offered by Sanchez was inadmissible; it simply said that it was
going to strike parol evidence, whatever that evidence may be. Given this, there was and
is nothing for us to review.

 Given the chance that this matter may arise again on remand, we do note that while
the consent form may be a contract, the provisions at issue are far from specific. Again,
they do not expressly address the administration of a stellate ganglion block. As previously
stated, Crawford and Schaub endeavor to find succor from open ended words such as
"advisable," "professional judgment," and "professional opinion." And, because the
exercise of professional judgment and opinion is dependent upon the circumstances
involved and compliance with accepted medical standards applicable under those
circumstances, knowledge that the patient did not want the procedure done would be a
relevant circumstance to consider.

 Accordingly, we reverse the summary judgment and remand the proceeding to the
trial court.


 Brian Quinn 

 Chief Justice

 

 
1. Ex-Chief Justice Philip Johnson originally sat on the panel that heard oral argument on this case. 
However, he did not participate in this opinion.
2. The block entails an injection into the recipient's spine. 
3. We take care to note that the same may not be true when the consent form expressly grants the
physician authority to do the specific procedure done. Our opinion should not be read to encompass that
situation since those are not the circumstances here. Again, the consent forms Sanchez executed did not
expressly mention a stellate ganglion block. So, to escape liability, Crawford and Schaub invoked clauses
permitting them to undertake additional procedures and administer anesthetics deemed required, necessary,
or advisable in the exercise of their judgment. 
4. Crawford and Schaub repeatedly allude to the decision in Byington v. Mize, No. 05-00-0786-CV, 2002
Tex. App. LEXIS 5008 (Tex. App.-Dallas, July 15, 2002, no pet.) as dispositive. Though similarities exist
between the consent forms involved there and those at issue here, the unpublished and heretofore uncited
opinion is not one upon which we can rely. This is so for several reasons, not the least of which is the
absence of evidence indicating that Byington expressly told Mize not to perform the objectionable procedure. 
Moreover, the opinion deviates from both the Dallas court's own published opinion in Russell v. Murphy, 86
S.W.3d 745 (Tex. App.-Dallas 2002), rev'd on other grounds, 167 S.W.3d 835 (Tex. 2005) and the Supreme
Court's published opinion in that same case. See Murphy v. Russell, 167 S.W.3d 835, 839 (Tex. 2005). 
Again, the latter state that determining whether a physician acted within the scope of his consent is an
objective decision dependent upon expert testimony indicating compliance with accepted community medical
standards. Yet, the Byington panel deemed expert testimony irrelevant. So too did it imply that the subjective
determination of the physician was controlling. And, we find the latter implication most interesting. How can
a subjective test control when the consent form itself calls for the use of "professional" judgment and the
profession is obligated to comply with generally accepted medical standards applicable to similarly situated
physicians? Simply put, it cannot. 



Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:2;
 font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h3
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:link, span.MsoHyperlink
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:#004B91;
 mso-text-animation:none;
 text-decoration:none;
 text-underline:none;
 text-decoration:none;
 text-line-through:none;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.term1
 {mso-style-name:term1;
 mso-style-unhide:no;
 font-weight:bold;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0417.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0417.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0417.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0417.cr%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0417.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00417-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



MARCH
29, 2011

 



 

MICKEY CHARLES ROBINETT, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 355TH DISTRICT COURT OF HOOD
COUNTY;

 

NO. CR11394; HONORABLE RALPH H. WALTON JR., JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

ON ABATEMENT AND REMAND

 

Appellant Mickey Charles Robinett
appeals from his jury convictions for aggravated sexual assault, inducing a
child to engage in sexual conduct, and indecent exposure and the resulting
concurrent sentences.  Appellants
appointed counsel filed a motion to withdraw, together with a brief pursuant to
Anders v. California, 386 U.S. 738,
744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), wherein
he certified that, after diligently searching the record, he found the appeal
without arguable merit.  Along with his
brief, he also filed a copy of a letter he sent to appellant informing him of
his conclusion and of appellants right to appeal pro se.  This court notified
appellant of his right to file his own brief or response.  Appellant has not done so.

            It is the duty of a criminal defense attorney to
zealously represent the interests of his client on appeal. In
re Schulman, 252 S.W.3d 403, 406 (Tex.Crim.App.
2008). If the appointed attorney finds the
"case to be wholly frivolous, after a conscientious examination of it, he
should so advise the court and request permission to withdraw." Id., quoting Anders,
286 U.S. at 744. The brief filed in an Anders situation is "an assurance to the
appellate court that the attorney has indeed made a thorough and conscientious
examination of the record, has provided the appellate court with the
appropriate facts of the case and its procedural history, and has pointed out
any potentially plausible points of error."  252 S.W.3d at 406.

When
we receive a brief filed pursuant to Anders,
we may not simply accept counsels conclusion that the appeal is baseless.  Instead, we too must review the record to
determine if there is an arguable ground for appeal. Stafford
v. State,
813 S.W.2d 503, 511 (Tex.Crim.App. 1991).

This
case involved a thirteen-count indictment. 
Six counts were waived by the State and seven were submitted to the
jury.  The jury trial spanned three days.
Ten witnesses testified for the State. 
Appellant called three witnesses and testified on his own behalf. The
jury found appellant guilty of all seven submitted counts and appellant was
sentenced to concurrent sentences of 60 years for each of the two aggravated
sexual assault of a child convictions, 20 years for each of the four sexual performance by a child convictions and 10 years for the
indecency with a child conviction.  In
analyzing the record, counsel raised an issue concerning the courts decision
on the proper outcry witness.  Having
reviewed the record, we find the courts decision on that issue presents an
arguable appellate issue, at least as to some counts.  We note also that appellate counsel
identified other rulings on evidentiary matters that were adverse to appellant,
but did not explain why they do not present arguable appellate points.  We do not comment on the ultimate merit of
these or any other potential appellate issues, but we do find further briefing
is necessary. 

Accordingly,
we abate the matter and remand the cause to the 355th Judicial
District Court of Hood County, Texas. See Stafford, 813
S.W.2d at 511. On remand, the trial court is ordered to appoint a new attorney to represent appellant
in his appeal. Next, the trial court shall cause the name, address, and state
bar number of the newly appointed counsel to be included in a supplemental clerks
record. That supplemental record shall be filed by the trial court with the
clerk of this court on or before April 28, 2011.  Appellants newly-appointed counsel shall
prepare and file an appellants brief addressing the outcry witness issue and
any other arguably meritorious issues counsel identifies.  The brief shall be due thirty days from the
date of the trial courts order appointing counsel.

Finally,
because the opinion expressed by appellant's current attorney could be viewed
as creating a conflict of interest, we grant his motion to withdraw.

It
is so ordered.

                                                                                    Per
Curiam

Do
not publish.