**Johnette RUSSELL, Appellant,**

v.

**Mark T. MURPHY, M.D., Appellee.**

**No. 05–01–01267–CV.**

Court of Appeals of Texas, Dallas.

Aug. 15, 2002.

Rehearing Overruled Oct. 11, 2002.

James Michael Baker, Law Office of James M. Baker, Houston, for appellant.

Michael Alan Yanof, Stinnett, Thiebaud & Remington, L.L.P., Dallas, for appellee.

Before Justices MORRIS, WRIGHT, and O'NEILL.

## OPINION

Opinion By Justice MORRIS.

In this appeal, Johnette Russell contends the trial court erred in dismissing

her suit under section 13.01(e) of the Medical Liability and Insurance Improvement Act. Russell argues she did not assert a "health care liability claim" and, therefore, her suit was not subject to the requirements of the Act. After reviewing the claims asserted in her petition and the relevant case law, we agree with Russell. We reverse the trial court's order dismissing Russell's suit and remand the cause for further proceedings.

## I.

According to Johnette Russell's first amended original petition, she was admitted as a patient at Zale Lipshy Hospital on September 15, 1998. While at the hospital, Russell underwent a biopsy necessitating the use of anesthesia. Russell asked to talk with the anesthesiologist, Dr. Mark Murphy, before the procedure began. In her petition, Russell states she specifically told Murphy she did not want to be sedated or to lose consciousness. She further told Murphy she wanted only a local anesthetic to be used during the procedure. Russell alleges Murphy agreed not to administer any sedation but told her he would still need to administer saline and possibly antibiotics.

After Russell was taken into the operating room, she immediately began to feel dizzy and then lost consciousness. Over one hour later, Russell awoke while being taken into the recovery room. Russell alleges Murphy admitted to her that he sedated her against her wishes.

In her petition, Russell alleges claims for violations of the Texas Deceptive Trade Practices Act, breach of oral contract, and battery based on Murphy "knowingly and intentionally administering or causing the administration of a sedative." Six months after Russell filed suit, Murphy filed a motion to dismiss her claims contending they were "health care liability claims" subject to the requirements of the Medical Liability and Insurance Improvement Act. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (Vernon Supp.2002).[1] Because Russell failed either to submit an expert report within 180 days after filing suit or seek an extension of time to do so as required by the Act, Murphy argued the claims against him must be dismissed. *See id.* § 13.01(d), (e).[2] The trial court

---

1. Section 1.03(a)(4) defines a "health care liability claim" as:

   a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

2. Section 13.01(d) of the Act states:

   Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:
   (1) furnish to counsel for each physician or health care provider one or more ex-

   pert reports, with a curriculum vitae of each expert listed in the report; or
   (2) voluntarily nonsuit the action against the physician or health care provider.
   Section 13.01(e) states:
   If a claimant has failed, for any defendant physician or health care provider, to comply with subsection (d) of this section within the time required, the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney:
   (1) the reasonable attorney's fees and costs of court incurred by that defendant;
   (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and
   (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

agreed and dismissed Russell's suit. Russell appeals the trial court's dismissal order arguing her claims are not based on allegations of medical negligence but are based instead upon a broken promise. As such, Russell contends her claims are not covered by the Act and she was not required to submit an expert report.

## II.

This case presents a now familiar question arising in suits brought against health care providers. The issue is whether the plaintiff's claims against the defendant doctor fall outside the scope of the Medical Liability and Insurance Improvement Act or whether the plaintiff has merely attempted to frame her claims in such a way as to avoid the standards and requirements of the Act. As we stated in *Bush v. Green Oaks Operator, Inc.*, the Act sets strict requirements for bringing health care liability claims against health care providers, and the effectiveness of the Act depends on its vigilant enforcement. *Bush v. Green Oaks Operator, Inc.*, 39 S.W.3d 669, 671 (Tex.App.-Dallas 2001, no pet.). As we also stated, however, not every action taken by a health care provider or every injury suffered by a patient falls within the ambit of the Act. *Id.* To determine whether the claim is a "health care liability claim" covered by the Act, we do not look merely at the words used in a plaintiff's pleading, but we examine the underlying nature of the plaintiff's claims. *See MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex.1998); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994). If the claim is not based on a health care provider's breach of an accepted standard of medical care, health care, or safety, then

it is not subject to the requirements of the Act. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, §§ 1.03(a)(4), 12.01(a); *see also Sorokolit*, 889 S.W.2d at 242.

In examining the underlying nature of a claim, our focus is on what a plaintiff must prove to prevail. *See MacGregor*, 985 S.W.2d at 41; *see also Gomez v. Matey*, 55 S.W.3d 732, 735 (Tex. App.-Corpus Christi 2001, no pet.). If a plaintiff need not prove a breach of an applicable standard of care, the provisions of the Act are not invoked, and an expert report is not required. In this case, Russell's claims are based on Murphy's alleged administration of a sedative despite her specific request that he not do so and, further, despite Murphy's alleged express representation to Russell that no sedative would be given to her. Russell does not assert a claim based on the manner in which Murphy administered the sedative. Nor does she assert a claim that she was misinformed about the need for a sedative. She simply claims that specific promises and representations were made by Murphy and then broken. To succeed on her claims as alleged in her petition, it is not necessary for Russell to show that Murphy breached accepted standards of medical care, health care, or safety. It follows, then, that Russell has no need for a medical expert or an expert report as contemplated by sections 13.01(d) and 13.01(r)(6) of the Act.[3] Accordingly, we conclude Russell has not alleged a "health care liability claim" and her suit should not be dismissed under the Act due to her failure to file an expert report.

---

**3.** Section 13.01(r)(6) states:

"Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Murphy relies heavily on the case of *Drury v. Baptist Memorial Hospital System*, 933 S.W.2d 668 (Tex.App.-San Antonio 1996, writ denied), to contend that Russell's claims must be governed by the Act. However, *Drury* is both factually and analytically distinguishable from this case. The plaintiff in *Drury* was admitted to a hospital for surgery to correct internal bleeding. *Id.* at 670. Because she was concerned about the safety of blood obtained from a blood bank, the plaintiff asked that she be transfused only with blood donated by her friends. *Id.* According to the plaintiff, the hospital agreed. The plaintiff was able to collect four units of "direct donor" blood to be used in her operation. *Id.*

Before the operation, a doctor advised the plaintiff that the blood she obtained from the direct donors might not be sufficient to meet her needs and there was a possibility that blood from a blood bank might be required. *Id.* After this discussion, the plaintiff signed consent forms agreeing to the transfusion of blood without any restrictions on the source of the blood. *Id.* The plaintiff also signed a consent form authorizing the doctors to "deviat[e] from previous agreements according to professional judgment to be exercised as the need arose." *Id.* at 676. The plaintiff was eventually transfused with two units of blood, one from a direct donor and the other from a blood bank. *Id.* at 670. The plaintiff sued the hospital alleging causes of action under both the Medical Liability and Insurance Improvement Act and the Texas Deceptive Trade Practices Act. *Id.* at 671.

The DTPA claim in *Drury* was based on the administration of blood from a blood bank "contrary to a previous agreement." *Id.* at 676. The hospital moved for summary judgment arguing the plaintiff was attempting to recast a health care liability claim as a DTPA claim and, therefore, her claims were barred under section 12.01(a) of the Act.[4] The court agreed, stating that "an allegation that [the hospital] breached an agreement to render medical services in a particular manner is no different than alleging that [the hospital] has breached the accepted standard of medical care." *Id.* Murphy focuses on this statement to argue Russell's claim for breach of an agreement not to administer a sedative is a health care liability claim. What Murphy fails to recognize is that the court's statement in *Drury* must be read in the context of the facts presented in that case.

The plaintiff in *Drury* signed consent forms allowing the hospital to deviate from its agreement to use only direct donor blood if, according to the exercise of "professional judgment," the use of blood from a blood bank was necessary. To prove the hospital breached its agreement with her, the plaintiff necessarily had to show that professional judgment did not indicate that use of blood from a blood bank was needed. Such a showing required expert testimony regarding professional judgment in light of accepted standards in the medical community. Accordingly, in *Drury*, proving a breach of the alleged agreement was the same as proving a breach of accepted standards of medical care. The underlying nature of the plaintiff's claims in *Drury* showed they were health care liability claims.

---

4. Section 12.01(a) states:
   Notwithstanding any other law, no provisions of Sections 17.41–17.63, Business & Commerce Code shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider.

Unlike the case before us, *Drury* did not involve a dismissal for failure to comply with the Act's expert report requirement, but rather was an appeal of a summary judgment. We have no summary judgment record here showing the alleged agreement between Russell and Murphy either permitted or required Murphy to exercise any professional judgment. Furthermore, Russell alleges she did not consent to the use of a sedative under any conditions. Therefore, accepted standards of medical care are irrelevant to prove either the terms of the agreement or whether it was breached. Once again, because accepted standards of medical care are not relevant to Russell's claims, her claims cannot be considered health care liability claims. *Drury* is not dispositive of this case.

Finally, Murphy relies on *Williams v. Walker*, 995 S.W.2d 740 (Tex.App.-Eastland 1999, no pet.), to argue that because Russell's claims arise out of the medical treatment she received, her claims must be considered health care liability claims. In *Williams*, the plaintiff sought medical care for an abscess and asked the doctor to treat her only with antibiotics. *Id.* at 741. The plaintiff alleged she clearly told the doctor she did not want to be "cut" in any way. *Id.* While examining the abscess, the doctor proceeded to surgically drain it, resulting in profuse bleeding and an incised vein. *Id.* The plaintiff later learned the abscess was not completely removed. *Id.* The plaintiff sued the doctor for assault and battery, alleging he performed a medical procedure without consent and against the plaintiff's express direction. *Id.*

In analyzing the plaintiff's claims in *Williams*, the court focused on the fact that all the allegations were related to medical treatment provided by the defendant doctor. *See id.* at 742. Emphasizing the first portion of the definition of a "health care liability claim," the court held that because the plaintiff was alleging a "cause of action against a health care provider or physician for treatment," her claims were subject to the Act. *Id.* The court then dismissed the case because the plaintiff failed to timely file an expert report. *Id.*

By focusing on the first portion of the definition of "health care liability claim," the court appears to have disregarded the remainder of the definition that limits the term "treatment" to treatment involving a "claimed departure from accepted standards of medical care or health care or safety." TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4). As the definition makes clear, it is not enough that the plaintiff's claims arise out of the rendition of medical services. The claims must also involve a departure from accepted medical, health care, or safety standards. To the extent the court in *Williams* did not recognize this limitation, the opinion has little impact on our analysis in this case.

The expert report required by section 13.01 of the Act is intended to provide a defendant and the trial court with a "fair summary" of opinion about the standards of care applicable to the defendant's actions and how the health care provider may have departed from those standards. *See id.* § 13.01(r)(6). In this way, patently unmeritorious claims for medical malpractice can be eliminated early in the proceedings. Here, Russell does not allege and need not prove that Murphy deviated from any standard of medical care, health care, or safety. Thus, such a report is not required and Murphy is in no way prejudiced by Russell's failure to produce one. This fact reinforces our conclusion that Russell's claims do not fall within the purview of the Act.

Because Russell's claims are not subject to the requirements of the Medical Liabili-

ty and Insurance Improvement Act, we reverse the trial court's dismissal order and remand the cause for further proceedings.