Opinion issued July 12, 2007 




 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00066-CV






CASEY HUNSUCKER, Appellant


V.


ABDEL K. FUSTOK M.D. AND ABDEL K. FUSTOK, M.D., P.A., Appellees






On Appeal from 152nd District Court

Harris County, Texas

Trial Court Cause No. 2002-27562






O P I N I O N


 Appellant, Casey Hunsucker, appeals an order dismissing her suit against
appellees, Abdel K. Fustok, M.D. and his professional association, Abdel K. Fustok,
M.D., P.A. (hereinafter referred to as "Dr. Fustok"). In three issues, Hunsucker
argues: (1) that the trial court erred in dismissing her suit with prejudice pursuant to
section 13.01(e) of former article 4590i (1) for failing to file an expert report as required
by section 13.01(d); (2) that the award of attorney's fees was erroneous; and (3) that
the trial court should have permitted Hunsucker to comply with section 13.01(d) after
finding that it was a necessary step for her suit to proceed. 

 In one cross-point, appellees, Abdel K. Fustok, M.D. and his professional
association, Abdel K. Fustok, M.D., P.A., argue that the trial court abused its
discretion in failing to award attorney's fees for appeal. 

 We modify the order of the trial court to award appellate attorney's fees in
favor of the appellees and affirm the order that dismissed appellant's claims as
modified. 

Background

 In late December 1999, Hunsucker met with Dr. Fustok to discuss breast
implant surgery. Hunsucker had had previous breast implant surgery and became
concerned about the appearance of her breasts. Dr. Fustok stated that there was a
possibility that both her implants had leaked and recommended that the implants be
replaced. Hunsucker alleges she told Dr. Fustok that she did not want the surgery
performed peri-areolar (through the nipple/areola) and that Dr. Fustok agreed to insert
the new implants submammary (underneath the breast).

 On March 16, 2000, Dr. Fustok performed surgery on Hunsucker. Rather than
inserting the new implants submammary, he reinserted the old implants peri-areolar. 
Following the surgery, Hunsucker was dissatisfied with the results and claims she has
lost all feeling around the nipple/areola area as a result of the surgery performed by
Dr. Fustok. 

 Hunsucker filed her original petition on May 30, 2002, based on two theories:
(1) negligence and gross negligence and (2) fraud, fraudulent inducement, and breach
of contract. On November 13, 2002, instead of filing an expert report within 90 days
of filing suit, Hunsucker opted to file two separate cost bonds in the amount of $5,000
each, as allowed by section 13.01(a) of former article 4590i. (2)
 On April 3, 2003, Dr.
Fustok filed a motion to dismiss and to award sanctions based on Hunsucker's failure
to file an expert report within 180 days of filing suit, as mandated by section 13.01(d)
of former article 4590i, (3) and on her failure to meet an extended deadline requiring
that the expert report be filed 30 days after the deposition of Dr. Fustok. 

 On April 11, 2003, Hunsucker filed a response to Dr. Fustok's motion to
dismiss and for sanctions, claiming that only her negligence claim fell within the
ambit of section 4590i and that she voluntarily nonsuited the negligence claim, as was
reflected in her amended petition filed that same day. Hunsucker's factual allegations
in her amended petition were substantially the same as in her original petition, but the
negligence theory had been deleted and a claim for assault and battery had been
added. On June 23, 2003, the trial court denied Dr. Fustok's motion to dismiss and
request for sanctions. 

 The parties filed a joint motion to abate on January 5, 2005 because a petition
for review was pending in Russell v. Murphy, 86 S.W.3d 745 (Tex. App.--Dallas
2003), rev'd, Murphy v. Russell, 167 S.W.3d 835 (Tex. 2005) (per curiam), and both
parties thought that the decision by the Texas Supreme Court would be dispositive
of the main issue presented here. The agreed order of abatement was granted by the
trial court on January 10, 2005. The Texas Supreme Court issued the Murphy opinion
on July 1, 2005. 

 On July 5, 2005, Dr. Fustok filed his first amended motion to dismiss. On
December 23, 2005, the trial court granted Dr. Fustok's amended motion to dismiss
with prejudice, citing the supreme court's decision in Murphy v. Russell, and ordered
Hunsucker to pay Dr. Fustok $5,000 as reasonable attorney's fees. The court later
amended its final order on February 2, 2006 and ordered that Hunsucker pay $9,540
in reasonable attorney's fees and that the two separate cost bonds of $5,000 each be
forfeited. This appeal followed.

Standard of Review


 We review a trial court's article 4590i section 13.01 rulings under an abuse of
discretion standard. Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003) (construing
section 13.01(g)); Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex.
2001) (construing section 13.01(e)); Torres v. Mem'l Hermann Hosp. Sys., 186
S.W.3d 43, 45 (Tex. App.--Houston [1st Dist.] 2005, no pet.). A trial court abuses
its discretion if it acts arbitrarily or unreasonably without reference to any guiding
rules or principles when it dismisses the appellant's case with prejudice. Walker, 111
S.W.3d at 62; Torres, 186 S.W.3d at 45. When reviewing a matter committed to the
trial court's discretion, we may not substitute our own judgment for the judgment of
the trial court. Walker, 111 S.W.3d at 62; Torres, 186 S.W.3d at 45. However, to the
extent the resolution of this issue requires interpretation of the statute itself, we
review under a de novo standard. Torres, 186 S.W.3d at 45; Ponce v. El Paso
Healthcare Sys., Ltd., 55 S.W.3d 34, 36 (Tex. App.--El Paso 2001, pet. denied). 

4590i Provisions


 Former article 4590i and its expert report requirements apply to a patient's
claims when those claims come within the statutory definition of a "health care
liability claim," regardless of whether they are tort or contract claims. Murphy, 167
S.W.3d at 837. A "Health Care liability claims" is:

a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care or health care safety which proximately results
in injury to or death of the patient, whether the patient's claim or cause
of action sounds in tort or contract. 


Id. (4)

 The term "physician" is defined as "a person licensed to practice medicine in
this state." (5) The term "health care" is defined as "any act or treatment performed or
furnished, or which should have been performed or furnished, by any health care
provider for, to, or on behalf of a patient during the patient's medical care, treatment,
or confinement." (6) Murphy, 167 S.W.3d at 837; Torres, 186 S.W.3d at 46.

 Section 13.01(d) of former article 4590i provides that, in every suit in which
a health care liability claim is asserted, an expert report must be filed within 180 days
after the suit is filed. (7) Failure to comply with section 13.01(d)'s requirements will
result in the consequences provided for in section 13.01(e) of former article 4590i. (8) Applicability of 4590i

 Hunsucker contends that her claims do not fall within the ambit of former
article 4590i because she "did not plead a cause of action requiring the analysis of
any standard of care" and thus her claims are not health care liability claims. Rather,
Hunsucker argues that Dr. Fustok defrauded her, breached an express warranty, and
assaulted her by performing her surgery peri-areolar when the parties had expressly
agreed on submammary surgery. Hunsucker attempts to characterize her claims as
falling outside 4590i by asserting common-law fraud, breach of warranty, and tort
claims. 

 It is well established "that a claimant cannot escape the Legislature's statutory
scheme by artful pleading." Murphy, 167 S.W.3d at 838; Torres, 186 S.W.3d at 47
(citing Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2003)). In enacting
former article 4590i, the Legislature intended health care liability claims to be
scrutinized by an expert or experts before a suit can proceed. Murphy, 167 S.W.3d
at 838. To determine whether a cause of action falls under 4590i's definition of a
"health care liability claim," we examine the claim's underlying nature. Garland
Cmty. Hosp., 156 S.W.3d at 543 (citing Sorokolit v. Rhodes, 889 S.W.2d 239, 242
(Tex. 1994)). If the act or omission alleged in the complaint is an inseparable part of
the rendition of health care services, then the claim is a health care liability claim. 
Garland Cmty. Hosp., 156 S.W.3d at 544 (citing to Walden v. Jeffery, 907 S.W.2d
446, 448 (Tex. 1995) (per curiam)). 

 In Murphy, the appellee sued an anesthesiologist for allegedly administering
a general anesthetic when it had been expressly agreed by the parties that only a local
anesthetic would be used, and she asserted claims for battery, breach of contract, and
violations of the Deceptive Trade Practices Act (DTPA). 167 S.W.3d at 836-87. The
Texas Supreme Court dismissed appellee's suit for failure to comply with the expert
report requirements of 4590i, holding that the report was necessary in order for the
suit to proceed. Id. at 838-39. 

 The Texas Supreme Court held that 4590i's expert report requirement
establishes a threshold requirement that a claimant in a health care liability claim
must satisfy to continue a lawsuit. 167 S.W.3d at 838. The court explained that the
expert report is not a requirement for recovery and that perhaps when discovery is
completed and the case is tried, there will have been no need for the expert testimony
if the final verdict may be sustained without it. Id. However, the Legislature
envisioned that discovery and the ultimate determination of what issues are submitted
to the fact finder should not go forward unless at least one expert has examined the
case and opined as to the applicable standard of care, that the standard was breached,
and that there is a causal relationship between the failure to meet the standard of care
and the injury, harm, or damages claimed. Id. 

 Hunsucker argues that the decision in Murphy does not affect her claims in that
the Murphy court stated that the appellee needed an expert in her case because "[i]t
might be that there were emergency circumstances that arguably warranted general
anesthesia without [her] consent, or that a general anesthetic was administered
without Murphy's actual knowledge at the time it was done." Id. at 839 (emphasis
added). Essentially, Hunsucker tries to argue that the court narrowly held that an
expert report was necessary in Murphy because an expert witness was needed to
testify as to possible emergency circumstances that made the usage of a general
anesthetic necessary. 

 Hunsucker misconstrues the court's holding. The Murphy court held that
expert testimony may or may not be necessary at trial but that the expert report is
always necessary at the discovery phase for a health care liability claim even to
proceed to trial. See id. at 838-39. The issue we are confronted with here is identical
to the issue presented in Murphy, that is, whether Hunsucker may proceed with her
claim against Dr. Fustok without filing an expert report as required by former article
4590i, not whether expert testimony will ultimately be needed at trial. See id. at 838. 

 In a supplemental brief, Hunsucker urges this court to consider Mills v. Pate, 
in which Mills sued Dr. Pate following liposuction and thigh lift surgery that caused
her skin to sag severely. No. 08-04-00335-CV, 2006 WL 1508616, at *1-4 (Tex.
App.--El Paso June 1, 2006, no pet.). Mills sued Dr. Pate under 4950i, claiming that
he was negligent by failing to properly warn her and to obtain her informed consent
with respect to the probable outcome of the surgical procedures and breach of express
warranty. Id. at *3. 

 Dr. Pate filed a traditional motion for partial summary judgment with regard
to Mills's consent claims, arguing that the claims were barred by the two-year statute
of limitations contained in section 10.01 of former article 4590i, and an amended "no-evidence" motion for partial summary judgment, alleging that there was no evidence
to support the essential elements of Mills's remaining claims. Id. at *4. The trial
court granted both of Dr. Pate's motions for partial summary judgment. Id. The court
of appeals held that the trial court had erred in granting a no-evidence summary
judgment as to Mills's breach of express warranty claim, finding that she had
presented some probative evidence to support her common-law claim. Id. at *11. 
The Mills court held that although Mills's claims arose out of the patient-client
relationship, they were not inseparable from her negligence claims and therefore did
not require a determination as to whether Dr. Pate failed to meet the accepted
standard of medical care. Id. at *10. The Mills court relied heavily for its holding on
Sorokolit, upon which Hunsucker also relies. 

 In Sorokolit, a patient sued a plastic surgeon under the DTPA, alleging breach
of implied warranties and misrepresentations after seeing Dr. Sorokolit for breast
augmentation surgery. 889 S.W.2d at 240. The patient was told to bring pictures of
what she wanted her breasts to look like, and Dr. Sorokolit promised that, following
her surgery, her breasts would conform to those pictures. Id. at 240. The issue in
Sorokolit was whether section 12.01(a) of former article 4590i precluded an action
for knowing misrepresentation or breach of an express warranty under the DTPA. (9) 
Id. at 241. The court in Sorokolit held that there can be no DTPA claim against a
physician for damages if the damages result, or are alleged to result, from the
physician's negligence, but if the alleged DTPA claim is not based on the physician's
breach of the accepted standard of medical care, section 12.01(a) of former article
4950i does not preclude suit for violation of the DTPA when the physician has
expressly warranted a particular result. Id. at 243. Sorokolit does not, as Hunsucker
urges, limit claims arising under former article 4590i to only those health care
liability claims that are "based on a breach of a standard of care applicable to health
care providers." Former article 4590i is applicable to all claims that can be
characterized as "health care liability claims." Murphy, 167 S.W.3d at 839.

 The facts of Hunsucker's case are distinguishable from Sorokolit and Mills, in
that Hunsucker's claims arise from an agreement between the parties that her surgery
would be performed in a particular manner. Dr. Fustok did not promise Hunsucker
a particular result, as the physician did in Sorokolit and Mills. Furthermore, the court
in Sorokolit did not decide whether an expert report was necessary because that
provision of former article 4590i was not enacted until 1995, one year after the
Sorokolit decision. 

 The facts in this case are more analogous to the facts in Murphy, in which the
patient was given a general anesthetic after having specifically requested a local
anesthetic. 167 S.W.3d at 837. The Texas Supreme Court in Murphy specifically
addressed the narrow issue in Sorokolit by saying, "[W]e are not called upon to
determine whether section 12.01 of former article 4590i bars the applicability of the
DTPA to these claims." Id. at 839. Rather, "[t]he only question before us is whether
[the appellee] was required to file an expert report in order to proceed with her suit." 
Id. The same issue present in Murphy is present here. In addressing this issue, the
Murphy court held that all of the patient's claims, including her DTPA claims, were
health care liability claims, and as such, were subject to the expert report
requirements of former article 4590i. (10) Id. at 839. 

 In looking at the underlying nature of Hunsucker's claim that Dr. Fustok
performed a surgical procedure in a manner that the parties had agreed not to use, we
conclude that the claim is inseparable from the rendition of health care services and,
as such, is a health care liability claim. See Garland Cmty. Hosp., 156 S.W.3d at 543;
Torres, 186 S.W.3d at 47; Sterrett v. Jacobs, 118 S.W.3d 877, 880 (Tex.
App.--Texarkana 2003, pet. denied) (holding that breast implant procedure is
inseparable part of plastic surgeon's professional services). Because her claims were
health care liability claims, Hunsucker was required to comply with the expert report
requirements of section 13.01(d) of former article 4590i in order to proceed with her
suit. (11) See Murphy, 167 S.W.3d at 839. Because Hunsucker failed to do so, the trial
court did not abuse its discretion by dismissing the suit with prejudice in accordance
with section 13.01(e) of former article 4590i. (12) 

 We overrule Hunsucker's first issue on appeal. 

Award of Attorney's Fees

 In her second issue on appeal, Hunsucker contends the trial court erred in
awarding Dr. Fustok attorney's fees. The only argument Hunsucker asserts in support
of this point is that the trial court erred in finding that she failed to comply with
former article 4590i because her claim did not fall within the meaning of a health care
liability claim and, therefore, she was not required to file an expert report. Having
held that the trial court properly found that Hunsucker's claims were health care
liability claims, we determine that an award of reasonable attorney's fees pursuant to
section 13.01(e) of former article 4590i was appropriate.

 In the alternative, Hunsucker argues that if this court finds that Murphy
changed her claims into health care liability claims, then the appropriate amount to
be awarded would be reasonable attorney's fees incurred after the Texas Supreme
Court issued Murphy. (13) We disagree.

 First, Murphy did not change Hunsucker's claims into health care liability
claims. Rather, Murphy clarified that health care liability claims and claims under
some other theory, such as the DTPA or breach of contract, are not mutually
exclusive; meaning that claims may be both. See Murphy, 167 S.W.3d at 839. 
Hunsucker's claims were health care liability claims when the suit was filed in 2001,
and her claims are health care liability claims now. Prior to the supreme court's
opinion in Murphy, case law showed that Hunsucker's claims were health care
liability claims. See Garland Cmty. Hosp., 156 S.W.3d at 544-45 (holding that claim
for negligent credentialing is health care liability claim because it is claim against
health care provider for departure from accepted standards of health care and is
inseparable from medical services patient received); Torres, 186 S.W.3d at 47-48
(holding that patient's claims for common law negligence for injuries she received
after falling on way to restroom was health care liability claim because underlying
nature of claim was that she did not receive proper medical care); MacGregor Med.
Ass'n v. Campbell, 985 S.W.2d 38, 40-41 (Tex. 1998) (per curiam) (holding that
patient's breach of contract and breach of warranty claims for treatment received at
clinic after ingesting formaldehyde were health care liability claims under former
article 4590i).

 Here, no matter how Hunsucker attempts to characterize her claims, they are
inseparable from Dr. Fustok's rendition of medical services and, as such, were the
type of claims characterized as health care liability claims by Texas courts, including
the Texas Supreme Court, even before the Texas Supreme Court issued Murphy.

 Hunsucker further contends that the trial court was without authority to bind
the two $5,000 bonds because they were effectively discharged when the trial court
denied Dr. Fustok's April 2003 motion to dismiss. Hunsucker concludes that the
reason the trial court denied Dr. Fustok's first motion to dismiss was that it had found
that no health care liability claim existed and therefore it was error for the trial court
to order the bonds forfeited in its amended final order. (14) The appellate record does
not indicate why the trial court denied Dr. Fustok's 2003 motion to dismiss. The trial
court was well within its discretion, and was statutorily required, to order the bonds
forfeited. (15) 

 We overrule Hunsucker's second issue on appeal. 

Allowance for Compliance

 In her third issue on appeal, Hunsucker contends the trial court erred in
refusing to allow her to comply with the expert-report requirements after finding that
she had to comply with 4590i. Hunsucker once again argues that the trial court
changed its position on whether or not her claims were health care liability claims,
as evidenced by the trial court's denial of Dr. Fustok's 2003 motion to dismiss and
the granting of his 2005 motion to dismiss. However, nothing in the record supports
Hunsucker's conclusion. 

 Under section 13.01(g) of former article 4590i, the court may grant a 30-day
grace period only if it finds that the failure to comply was by accident or mistake. (16) 
We review a trial court's decision not to grant a claimant a grace period to file an
expert report under an abuse of discretion standard. Sandles v. Howerton, 163
S.W.3d 829, 835 (Tex. App.--Dallas 2005, no pet.) (citing Walker, 111 S.W.3d at
62). A trial court abuses its discretion if it acts arbitrarily, unreasonably or without
reference to any guiding rules or principles. Powers v. Mem'l Hermann Hosp. Sys.,
81 S.W.3d 463, 465 (Tex. App.--Houston [1st Dist.] 2002, pet. denied) (citing
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)). 

 In determining whether a claimant acted intentionally or with conscious
indifference, we look to the claimant's knowledge or acts. Sandles, 163 S.W.3d at
837 (citing Horsley-Layman v. Angeles, 968 S.W.2d 533, 536 (Tex. App.--Texarkana
1998, no pet.)). In this context, an accident or mistake "is characterized by
inadequate knowledge of the facts or an unexpected happening that precludes
compliance while conscious indifference is the failure to take action which would
seem indicated to a person of reasonable sensibilities under similar circumstances." 
Id. (internal quotations omitted) (quoting Pfeiffer v. Jacobs, 29 S.W.3d 193, 198
(Tex. App.--Houston [14th Dist.] 2000, pet. denied)). 

 Hunsucker does not claim that her failure to comply with the expert report
requirements was due to accident or mistake. Thus, the trial court was well within its
discretion and authorized by statute to deny any extension. (17)

 We overrule Hunsucker's third issue on appeal.

Appellate Attorney's Fees

 In his sole cross-point, Dr. Fustok appeals the trial court's denial of his request
for attorney's fees on appeal. The general rule is that a trial court's award of
attorney's fees may include appellate attorney's fees. Neal v. SMC Corp., 99 S.W.3d
813, 818 (Tex. App.--Dallas 2003, no pet.) (citing Siegler v. Williams, 658 S.W.2d
236, 241 (Tex. App.--Houston [1st Dist.] 1983, no writ)). The trier of fact, in its
discretion, may allow a fee to an attorney for an appeal, but is not required to do so. 
Anderson, Greenwood & Co. v. Martin, 44 S.W.3d 200, 221 (Tex. App.--Houston
[14th Dist.] 2001, pet. denied). However, when there is uncontroverted testimony by
an interested party and the opposing party has the means and opportunity of
disproving the testimony and fails to do so, the testimony will be taken as true as a
matter of law. Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex.
1990) (per curiam).

 Dr. Fustok urges us to hold that the trial court abused its discretion in not
awarding appellate attorney's fees by relying on Hoelscher v. Kilman, No. 03-04-00440-CV, 2006 WL 358238 (Tex. App.--Austin Feb. 16, 2006, no pet.) (mem. op.). 
 In Hoelscher, the court found that the trial court abused its discretion in
denying appellate attorney's fees because there was uncontroverted testimony by the
appellee's attorney at trial on the reasonableness of the requested appellate attorney
fees. 2006 WL 358238, at *5. The court in Hoelscher applied the reasoning of
Ragsdale and Lee v. Perez, 120 S.W.3d 463 (Tex. App.--Houston [14th Dist.] 2003,
no pet.). 

 In Ragsdale, a candidate was awarded injunctive relief for alleged violations
of election laws, but was denied attorney's fees. 801 S.W.2d at 881. On remand, the
trial court awarded $150 in attorney's fees on the basis of uncontroverted testimony
that the candidate had incurred $22,500 in attorney's fees, including those incurred
on appeal. Id. at 881. The Texas Supreme Court held that the trial court abused its
discretion in limiting the amount of attorney's fees to $150 when there was
uncontroverted evidence that the appellant had incurred fees of $22,500. Id. at 882. 

 In Lee, a commercial lessee sued a landlord for breach of implied warranty of
suitability for commercial purpose and negligent misrepresentation. 120 S.W.3d at
465-66. The lessee prevailed on appeal. Id. at 470. At trial, the appellee presented
expert testimony as to his reasonable attorney's fees if the suit should be appealed.
Id. The trial court awarded none. Id. at 469. The appellate court held that although
a trial court had discretion to award a lesser or greater amount than the total amount
of attorney's fees sought, it does not have discretion to award nothing when there is
uncontested evidence of reasonable appellate attorney's fees that have been properly
sought by a prevailing party. Id. at 469-70.

 Here, Dr. Fustok's counsel filed a supplemental affidavit with his reply to
Hunsucker's response to Dr. Fustok's initial motion to dismiss and motion for
sanctions, filed April 17, 2003. In the affidavit, Dr. Fustok's counsel swore to the
attorney's fees that had been incurred up to the date of the affidavit and to reasonable
attorney's fees anticipated on appeal: $10,000 for appeal to the court of appeals,
$5,000 if the plaintiff petitioned to the supreme court for review, and an additional
$15,000 should the supreme court grant review. Dr. Fustok's initial motion was
denied. The same affidavit was filed with Dr. Fustok's first amended motion to
dismiss and for sanctions, filed on July 5, 2005. The trial court granted this motion
to dismiss. At no time did Hunsucker file a counter-affidavit. See Tex. Civ. Prac.
& Rem. Code Ann. § 18.001 (Vernon 1997). The trial court crossed out the portion
of the amended final order that awarded appellate attorney's fees without any stated
reason.

 Section 18.001 of the Texas Civil Practice and Remedies Code provides that,
unless a controverting affidavit is filed, an affidavit as to the amount of attorney's
fees will be presumed reasonable. See id. The statute also stipulates that a party
intending to controvert a claim reflected in the affidavit must file a counter-affidavit
no later than 30 days after receipt of the affidavit. Id. Here, Dr. Fustok presented
uncontroverted evidence as to reasonable attorney's fees. The amount requested for
appellate attorney's fees was clear, direct, positive, and could have been readily
controverted if the amount was not reasonable. See Ragsdale, 801 S.W.2d at 882. 
Thus, Dr. Fustok established the amount of attorney's fees as a matter of law. See id. 
Although the trial court had discretion to grant less than the requested amount upon
an appropriate showing of reasonableness, we conclude that the trial court abused its
discretion in awarding no attorney's fees for appeal in the face of uncontroverted
evidence of the fees incurred and anticipated. See Ragsdale, 801 S.W.2d at 882; Lee,
120 S.W.3d at 469-70.

 We sustain Dr. Fustok's sole cross-point on appeal. We modify the trial court's
judgment in accordance with the uncontested evidence to add $10,000 for attorney's
fees in this appeal, $5,000 in the event a petition to the supreme court is filed, and
$15,000 in the event the supreme court grants the petition. See Lee, 120 S.W.3d at
469-70. 



Conclusion

 We modify the order of the trial court to award appellate attorney's fees in
favor of the appellees and, as modified, affirm the order that dismissed appellant's
claims. 


 

 


 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.
1. See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01, 1995 Tex. Gen.
Laws 985, 986, repealed and recodified as amended by Act of June 2, 2003, 78th
Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 886, 884 (current
version at Tex. Civ. Prac. & Rem. Code Ann. § 74.001-.507 (Vernon 2005 & Supp.
2006)) [hereinafter referred to as former Tex. Rev. Civ. Stat. Ann. art. 4590i
§ 13.01].


 Section 13.01(e) provides:

 

 If a claimant has failed, for any defendant physician or health care
provider, to comply with Subsection (d) of this section within the time
required, the court shall, on the motion of the affected physician or health care
provider, enter an order awarding as sanctions against the claimant or the
claimant's attorney:

 

 (1) the reasonable attorney's fees and costs of court incurred by that
defendant;

 

 (2) the forfeiture of any cost bond respecting the claimant's claims
against that defendant to the extent necessary to pay the award; and


 (3) the dismissal of the action of the claimant against that defendant
with prejudice to the claim's refiling. 


Id. § 13.01(e).

 
2. Section 13.01(a) provides: 


 In a health care liability claim, a claimant shall, not later than the 90th day after
the claim is filed:


 (1) file a separate cost bond in the amount of $5,000 for each physician
or health care provider named by the claimant in the action;


 (2) place cash in an escrow account in the amount of $5,000 for each
physician or health care provider named in the action; or


 (3) file an expert report for each physician or health care provider with
respect to whom a cost bond has not been filed and cash in lieu of the
bond has not been deposited under Subdivision (1) or (2) of this
subsection. 


Former Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(a).

3. Section 13.01(d) provides:

 

 Not later than the later of the 180th day after the date on which a
healthcare liability claim is filed or the last day of any extended period
established under Subsection (f) or (h) of this section, the claimant shall, for
each physician or health care provider against whom a claim is asserted:

 

 (1) furnish to counsel for each physician or health care provider one or
more expert reports, with a curriculum vitae of each expert listed in the report;
or

 

 (2) voluntarily nonsuit the action against the physician or health care
provider. 


Former Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(d). 
4. Medical Liability and Insurance Improvement Act, 65th Leg., R.S., ch. 817,
§ 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, repealed by Act of June 2, 2003, 78th
Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(a)(13)) [hereinafter former Tex. Rev. Civ.
Stat. Ann. art. 4590i §§ 1.03, 12.01].
5. Id. § 1.03(a)(8) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(23)).
6. Id. § 1.03(a)(2) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(10)).
7. Former Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(d).
8. Id. § 13.01(e).
9. Former section 12.01(a) provided:

 

 Notwithstanding any other law, no provisions of Sections 17.41-17.63,
Business & Commerce Code, shall apply to physicians or health care providers
as defined in Section 1.03(3) of this Act, with respect to claims for damages
for personal injury or death resulting, or alleged to have resulted, from
negligence on the part of any physician, or health care provider. 


Former Tex. Rev. Civ. Stat. Ann. art 4590i § 12.01 (current version at Tex. Civ. Prac. &
Rem. Code Ann. § 74.004).
10. See former Tex. Rev. Civ. Stat. Ann. art 4590i § 13.01
11. Former Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(d). 
12. See id. § 13.01(e).
13. Hunsucker cites no authority for this contention. See Tex. R. App. P. 38.1(h). 
14. Hunsucker cites no authority for this proposition. See Tex. R. App. P. 38.1(h).
15. See former Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(e).
16. Section 13.01(g) provides:

 

Notwithstanding any other provision of this section, if a claimant has failed to
comply with a deadline established by Subsection (d) of this section and after
the hearing the court finds that the failure of the claimant or the claimant's
attorney was not intentional or the result of conscious indifference but was the
result of an accident or mistake, the court shall grant a grace period of 30 days
to permit the claimant to comply with that subsection. A motion by a claimant
for relief under this subsection shall be considered timely if it is filed before
any hearing on a motion by a defendant under Subsection (e) of this section. 


Former Tex. Rev. Civ. Stat. Ann. Art. 4590i § 13.01(g).
17. See Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(g).