

NUMBER 13-09-00350-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GULF COAST MEDICAL CENTER, LLC,
TONY TODD, CRNA, DAN MADSEN, M.D.
AND SOUTH TEXAS MEDICAL CLINICS, P.A.,               Appellants,

v.

JACQUELINE TEMPLE AND MARCUS
BANKS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF
MARKASIA BANKS, A DECEASED MINOR CHILD,              Appellees.

On appeal from the 23rd District Court
of Wharton County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Garza**

Appellants, Gulf Coast Medical Center, LLC ("Gulf Coast"), Tony Todd, CRNA, Dan

Madsen, M.D. and South Texas Medical Clinics, P.A. ("STMC"), challenge the trial court's

denial of their motions to dismiss the suit brought by appellees, Jacqueline Temple and

Marcus Banks, individually and as representatives of the estate of Markasia Banks, a

deceased minor child. Specifically, appellants argue that the trial court had no discretion

to deny their motions because appellees failed to timely serve an expert medical report.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2009). We reverse and

remand.

## I. BACKGROUND

On November 7, 2005, four-year-old Markasia Banks was admitted to Gulf Coast, a hospital in Wharton, Texas, to undergo a routine adenoidectomy.[1]  Dr. Madsen performed the surgery and Todd assisted.  Markasia was discharged from the hospital after the surgery, but was re-admitted several hours later due to complications.  She died later that day.  On November 6, 2007, appellees, Markasia's parents, filed suit alleging that appellants were negligent in their care and treatment of Markasia.[2]

In March of 2008, each appellant filed a motion to dismiss appellees' suit, claiming that (1) appellees were required to file an expert medical report pursuant to section 74.351 of the civil practice and remedies code, but that (2) appellees failed to do so prior to March 5, 2008, which was the deadline for the service of such a report.  *See id.* § 74.351(a) (stating that a claimant in a health care liability claim shall serve an expert medical report not later than the 120th day after the date the original petition was filed).

On March 19, 2008, appellees served an expert report prepared by Dennis R. Taylor, M.D., stating:  (1) what he believed to be the standard of care applicable to each defendant; (2) that the defendants breached that standard of care; and (3) that "[i]f the standard of care had been followed, [Markasia's] death would in reasonable probability not have occurred and an innocent child would not have died."  In responding to appellants' motions to dismiss, appellees argued that the case had been abated for sixty days due to appellants' failure to provide an authorization form for the release of protected health information.  *See id.* § 74.052(a) (Vernon 2005).  According to appellees, this abatement caused the 120-day deadline for the filing of an expert medical report to be extended by sixty days, to May 5, 2008, thereby rendering Dr. Taylor's report timely.  Appellees also

---

[1] An adenoidectomy is the surgical removal of adenoids, also known as pharyngeal tonsils, which are collections of lymphoid tissue on the roof and posterior wall of the nasopharynx.  IDA G. DOX, ET AL., ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY A16, T51 (1997).

[2] Appellees also named Triad Hospitals, Inc. ("Triad") as a defendant.  Triad is not a party to this appeal.

argued in their response to appellants' motions to dismiss that chapter 74 of the civil practice and remedies code, which includes the expert report requirement, violates the due process clause of the fourteenth amendment to the United States Constitution and the due course of law provision of the Texas Constitution. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19.[3]

After a hearing, the trial court denied appellants' motions to dismiss without explaining its reasoning, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008) (permitting appeal of interlocutory order denying all or part of a motion to dismiss for failure to serve an expert report in a health care liability claim). On appeal, appellants urge by six issues that the trial court erred by denying their motions to dismiss.[4] Specifically, they argue: (1) appellees were required to serve an expert medical report; (2) appellees failed to timely serve such a report; (3) appellees' failure to comply with the statutory medical authorization requirement did not toll or extend the expert report deadline; (4) the expert report eventually served by appellees was inadequate; (5) the expert report requirements are valid under the United States and Texas Constitutions; and (6) appellees are not entitled to a thirty-day extension of time in which to file a compliant expert report.

## II. STANDARD OF REVIEW

We review a trial court's order denying a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *NCED Mental*

---

[3] Appellees made the following colorful argument in their response to appellants' motions to dismiss:

It is a well known fact that [civil practice and remedies code chapter] 74 was ram-rodded through the Legislature by a right-wing legislator hell bent on denying consumers and common people their day in court. The bill's sponsor is no longer in the Legislature for good reason. The Plaintiffs' position is that this bill will not stand the light of day once it is examined by impartial Justices. It basically give[s] health care facilities, doctors, and nurses the right to kill people and not be held accountable for their actions as it is impossible to investigate the claims and deal with the many time constraints. . . . To deny these Plaintiffs their day in Court would be a great travesty and would lead fair-minded citizens to believe that we operate under a Hitler-like or Stalin-like government where due process is denied its citizens.

[4] Separate appellate briefs were filed by (1) Gulf Coast, (2) Todd, and (3) Dr. Madsen and STMC jointly. Each brief raises substantially the same issues.

3

*Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.) (applying abuse of discretion standard to trial court's denial of motion to dismiss); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied) (same); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion standard to trial court's granting of motion to dismiss). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet. denied). Therefore, when the issues are purely questions of law, we effectively conduct a de novo review. *See Pallares v. Magic Valley Elec. Coop., Inc.*, 267 S.W.3d 67, 69-70 (Tex. App.–Corpus Christi 2008, pet. ref'd) (applying a de novo standard of review to the issue of whether chapter 74 is applicable to plaintiff's claims); *see also Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (holding that "matters of statutory construction are questions of law for the court to decide rather than issues of fact"); *Neasbitt v. Warren*, 22 S.W.3d 107, 109 (Tex. App.–Fort Worth 2000, no pet.) (stating that the issue of the expert report requirement's applicability is a "pure question of law").

### III. DISCUSSION

#### A. Health Care Liability Claim

By their first issue, appellants argue that the claims asserted by appellees are subject to the expert report requirement of chapter 74 of the civil practice and remedies code. We must therefore determine whether appellees' claims are "health care liability claims" as defined in the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

A "health care liability claim" is defined as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action

4

sounds in tort or contract.

*Id.* § 74.001(a)(13) (Vernon 2005). A "health care provider" is "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care." *Id.* § 74.001(a)(12)(A). This includes a "health care institution" such as a hospital, as well as any "employee, independent contractor, or agent" thereof. *Id.* § 74.001(a)(11)(G), (a)(12)(A)(vii), (a)(12)(B)(ii).

Appellees concede that Gulf Coast, Dr. Madsen, and STMC are "health care providers," but argue that "there is no evidence in the record that Todd was a registered nurse at the time of the events giving rise to this case." Appellees do not dispute, however, that Todd was an "employee, independent contractor, or agent" of Gulf Coast and/or STMC. *See id.* § 74.001(a)(12)(B)(ii). We therefore conclude that Todd is a "health care provider" under the statutory definition.

We next turn to the specific nature of appellees' claims. In their first amended petition, appellees claimed that Dr. Madsen was negligent in:

    a.    Failing to recognize that the deceased child should never have been discharged so quickly after the surgery;

    b.    Failing to properly supervise the CRNA, [Tony Todd];

    c.    Failing to monitor the deceased child's condition; and in

    d.    Failing to treat the deceased child's condition properly.

Appellees claimed that Todd was negligent in:

    a.    Failing to supervise the administration of the drugs used to put the child to sleep;

    b.    Failing to ascertain the fact that the child should not have been discharged so quickly;

    c.    Failure to give the proper drugs in the correct amount of dosage;

    d.    Failure to monitor the deceased child's condition; and in

    e.    Failure to treat the deceased child's condition properly.

Finally, appellees claimed that Gulf Coast and STMC were negligent in:

a. Failure to properly supervise their employees;

b. Failure to properly supervise the administration of the drugs used to put the child to sleep;

c. Discharging the deceased child long before it was safe;

d. Abandoning the deceased child;

e. Failure to monitor the deceased child's condition;

f. Failure to treat the deceased child's condition properly; and in

g. Failure to provide the medical nursing care reasonably required for the deceased child's condition.

All of the claims made against appellants, including those alleging negligent supervision, involve alleged "departure[s] from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *See id.* § 74.001(a)(13); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005) (noting that a cause of action alleges a departure from accepted standards of medical care or health care only if the act or omission complained of is "an inseparable part of the rendition of medical services"); *Ponce v. El Paso Healthcare Sys. Ltd.*, 55 S.W.3d 34, 39 (Tex. App.–El Paso 2001, pet. denied) (noting that "the training and supervision of occupational therapists to provide the required care is necessarily governed by an acceptable standard of medical care, health care, or safety").

Appellees argue that no expert testimony would be needed to prove their claims at trial, and therefore, that the expert report requirement should not apply to those claims. We disagree. While we may consider whether expert testimony is necessary to prove a claim in determining whether a claim is a "health care liability claim," *see Diversicare*, 185 S.W.3d at 851, this is only one factor we take into account when making that determination. In this case, the claims made by appellees are clearly subject to the requirements of chapter 74 under the plain language of the statute, and so we need not consider whether or not expert testimony would in fact be necessary to prove those claims at trial. *See id.*; *Hunsucker v. Fustok*, 238 S.W.3d 421, 427 (Tex. App.–Houston [1st. Dist.] 2007, no pet.) ("[E]xpert testimony may or may not be necessary *at trial* but . . . the expert

report is *always* necessary at the discovery phase for a health care liability claim even to proceed to trial.") (citing *Murphy v. Russell*, 167 S.W.3d 835, 838-39 (Tex. 2005)) (emphasis in original).

We conclude that appellees' claims against all appellants are "health care liability claims" under the statutory definition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Therefore, the expert report requirement applied to these claims. *See id.* § 74.351. We sustain appellants' first issue.

## B.    Timeliness of the Report

By their second issue, appellants contend that the trial court erred in denying their motions to dismiss because appellees failed to serve an expert medical report within 120 days of filing suit. *See id.* § 74.351(a). By their third issue, appellants argue that the 120-day deadline for filing such a report was not tolled or extended due to appellees' failure to provide appellants with required pre-suit notice and medical authorization forms. *See id.* §§ 74.051(a) (Vernon 2005), 74.052. We agree.

> Section 74.051(a) of the civil practice and remedies code provides:

> Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.

*Id.* § 74.051. Section 74.052(a) provides as follows:

> Notice of a health care claim under Section 74.051 must be accompanied by a medical authorization in the form specified by this section. Failure to provide this authorization along with the notice of health care claim *shall abate all further proceedings against the physician or health care provider receiving the notice* until 60 days following receipt by the physician or health care provider of the required authorization.

*Id.* § 74.052(a) (emphasis added).

Noting that appellees had failed to comply with the notice and authorization requirements, Todd filed a notice of abatement on February 1, 2008, stating in part that "all further proceedings against this defendant in this matter are hereby ABATED for a period

7

of 60 days following receipt of the required authorization by this Defendant." On appeal, Todd argues in part that the abatement did not serve to toll or extend the expert report deadline because the case was abated only as to "proceedings *against*" Todd, *see id.* (emphasis added), and the service of an expert report by appellees would not constitute such a proceeding. Further, Gulf Coast, Dr. Madsen and STMC note correctly on appeal that the trial court never entered an order of abatement in this case. They also contend that any abatement that may have taken effect due to Todd's notice of abatement did not apply to them specifically because those appellants "never requested, received, or agreed to any abatement in the case." In response, appellees urge that, according to the plain language of the statute, an abatement takes effect automatically upon a plaintiff's failure to provide the required medical authorization. *See id.* Moreover, appellees contend that all parties to the suit were "prohibited from proceeding in any manner" during the period of abatement, and therefore, the "only reasonable conclusion" is that "the 120-day period for serving [an expert] report was extended by the period of abatement."

Assuming, without deciding, that (1) section 74.052 imposes an abatement automatically upon the plaintiff's failure to comply with the authorization requirement, and (2) such an abatement applies to all parties to the suit, we nevertheless conclude that such an abatement does not serve to toll or extend the 120-day expert report deadline. *See Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 330 (Tex. App.–San Antonio 2006, pet. denied); *Estate of Regis v. Harris County Hosp. Dist.*, 208 S.W.3d 64, 69 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Hagedorn v. Tisdale*, 73 S.W.3d 341, 348-49 (Tex. App.–Amarillo 2002, no pet.). In *Hagedorn*, the parties to a medical liability suit agreed to a sixty-day abatement order because the plaintiff had not complied with the notice requirement provided in the predecessor to chapter 74. 73 S.W.3d at 347. The Amarillo court noted that, although abatement is the proper remedy for failure to comply with the notice requirement, "some courts have found it permissible for certain actions to be taken during an abatement, such as the joinder of parties and the dismissal of the cause of action." *Id.* at 347-48 (citing *De Checa v. Diagnostic Ctr. Hosp., Inc.*, 852 S.W.2d

935, 938 n.5 (Tex. 1993); *United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840, 846 (Tex. App.–Corpus Christi 1999, no pet.)). The court concluded that the abatement order did not extend the deadline for filing an expert medical report. *Id.* at 348-49. The court explained its ruling by noting that the legislature could not have intended to allow plaintiffs to benefit by their failure to comply with the notice and authorization requirements:

> We are disturbed by the fact that, if an abatement for failure to give the required notice under the act automatically extends the deadline for filing the medical expert report, a plaintiff would in fact be rewarded with additional time for the filing of his report by his failure to comply with the statutory notice requirement. In other words, a health care provider would be placed in the position of having to choose whether to seek an abatement for the failure of the plaintiff to give him the statutorily required 60-day notice or to hold the plaintiff to the statutorily required deadline for filing the expert report. We cannot believe that the intent of the legislature to discourage frivolous lawsuits and encourage settlement of claims would be served by such a construction, since the legislature has determined that failing to timely file an expert report means that the claim is either frivolous or at best has been prematurely brought.

*Id.* at 348 (citing *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001)).

Appellees rely on *Campbell v. Kosarek*, 44 S.W.3d 647 (Tex. App.–Dallas 2001, pet. denied), in arguing that the statutory abatement served to toll the expert report deadline. In *Campbell*, the court found that a sixty-day abatement order rendered by the trial court served to extend the expert medical report deadline by sixty days. *Id.* at 650. However, *Campbell* is readily distinguishable from the instant case because the abatement order there was entered pursuant to a provision of the insurance code. *See id.* at 648. The abatement imposed in *Campbell* had nothing to do with the notice and authorization requirements of chapter 74, and we consider the case unpersuasive for that reason. Instead, we are compelled to follow the more persuasive precedent of *Hagedorn*, 73 S.W.3d at 348-49, and its progeny and conclude that any abatement caused by appellees' failure to comply with the statutory notice or authorization requirement did not serve to toll or extend the deadline for the serving of an expert medical report. *See id.*; *see also Emeritus Corp.*, 211 S.W.3d at 330 (following *Hagedorn*); *Estate of Regis*, 208 S.W.3d at 69 (same).

9

We conclude that appellees' expert report was untimely.[5]  Appellants' second and third issues are sustained.

## C.    Constitutionality of Expert Report Requirement

By their fifth issue, appellants argue that the expert report requirement imposed by chapter 74 is constitutional under the United States and Texas Constitutions.  *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19.  We agree.

When reviewing the constitutionality of a statute, we begin with a presumption that the statute is constitutional.  *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003); *see* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 2005).  The party challenging the constitutionality of a statute then bears the burden of demonstrating that it fails to meet constitutional requirements.  *Walker*, 111 S.W.3d at 66 (citing *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985)).

Every court that has considered whether the expert report requirement passes constitutional muster has concluded that it does.  *See, e.g., Wilson-Everett v. Christus St. Joseph*, 242 S.W.3d 799, 802-804 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (section 74.351 does not violate separation of powers provision of Texas Constitution); *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 855-56 (Tex. App.–Texarkana 2006, no pet.) (due process does not require "exceptions [to the expert report requirement] that would encompass any conceivable complication in order to pass constitutional muster"); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 461-62 (Tex. App.–Austin 2004, no pet.) (section 74.351 does not violate due course of law provision of Texas Constitution); *Perry v. Stanley*, 83 S.W.3d 819, 825 (Tex. App.–Texarkana 2003, no pet.) (same); *Mocega v. Urquhart*, 79 S.W.3d 61, 64 (Tex. App.–Houston [14th Dist.] 2002, pet. denied) (predecessor to section 74.351 did not violate open courts provision of Texas Constitution); *Gill v. Russo*, 39 S.W.3d 717, 718-19 (Tex. App.–Houston [1st Dist.] 2001, pet. denied) (same); *Schrop v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 736-37 (Tex. App.–San

---

[5] Because we find that the expert report was not timely filed, we need not address appellants' fourth issue arguing that content of the report is inadequate.  *See* TEX. R. APP. P. 47.1.

10

Antonio 1999, no pet.) (dismissal of claim due to failure to comply with expert report requirement, even if claim is meritorious, does not offend due process); *Horsley-Layman v. Angeles*, 968 S.W.2d 533, 537 (Tex. App.–Texarkana 1998, no pet.) (overruling constitutional challenges to cost bond and expert report requirements); *see also Etheredge v. McCarthy*, No. 05-05-00164-CV, 2006 Tex. App. LEXIS 5492, at *2-3 (Tex. App.–Dallas June 27, 2006, no pet.) (mem. op.) (dismissal imposed as a direct result of plaintiff's failure to file an expert report in compliance with the statutory deadline was appropriate and did not violate the due process clause).

Appellees primarily argue on appeal that the objective of the expert report requirement is to discourage and dispose of frivolous claims, *see Walker*, 111 S.W.3d at 66, and, because their claim is not frivolous, the statute is unconstitutional as applied to them. We recognize that injustice may result when a meritorious claim is dismissed with prejudice by virtue of a technical deficiency, such as the failure to timely file an expert medical report in a health care liability claim. However, we are not at liberty to craft exceptions to the expert report requirement every time the objective of that requirement is frustrated. *See id.* ("We do not believe the Constitution requires prior notice that the law is serious about a clearly stated consequence for failing to comply with its terms."); *see also Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995) (quoting *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968)) ("The wisdom or expediency of the law is the Legislature's prerogative, not ours."). Following the precedent of our sister courts, we conclude that the expert report requirement in chapter 74 of the civil practice and remedies code does not violate the due process clause of the fourteenth amendment to the United States Constitution or the due course of law provision of the Texas Constitution.

Appellants' fifth issue is sustained.

## D.  Entitlement to Thirty-Day Extension

By their sixth issue, appellants contend that, should we find that appellees failed to timely comply with the expert medical report requirement, appellees are not entitled to a thirty-day extension of time to file a compliant expert report. Again, we agree. Section

74.351(c) of the civil practice and remedies code provides that "[i]f an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). We have concluded that appellees failed to comply with the expert report deadline, but this is not because elements of an otherwise-timely-filed report were found deficient. Instead, appellees simply failed to serve any report whatsoever within the 120-day period. Accordingly, the trial court is without authority to grant appellees a thirty-day extension under section 74.351(c). *See id.* Appellants' sixth issue is sustained.

## IV. CONCLUSION

We reverse the judgment of the trial court denying appellants' motions to dismiss, and we remand the cause to the trial court to (1) award reasonable attorney's fees and costs of court to appellants, and (2) dismiss the suit against appellants with prejudice. *See id.* § 74.351(b).

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
21st day of January, 2010.